UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BETH FEDORNAK,

     Plaintiff,

v.                                    Case No.:  8:20-cv-416-T-30MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

### REPORT AND RECOMMENDATION

     Plaintiff Beth Fedornak filed a Complaint on February 21, 2020.  (Doc. 1).

Plaintiff seeks judicial review of the final decision of the Commissioner of the Social

Security Administration ("SSA") denying her claim for a period of disability,

disability insurance benefits, and supplemental security income.  The Commissioner

filed the transcript of the administrative proceedings (hereinafter referred to as "Tr."

followed by the appropriate page number), and the parties filed a joint memorandum

detailing their respective positions.  (Doc. 19).  For the reasons set forth herein, the

decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social

Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility

     The law defines disability as the inability to do any substantial gainful activity

by reason of any medically determinable physical or mental impairment that can be

expected to result in death or that has lasted or can be expected to last for a

continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.

## II.    Procedural History

Plaintiff applied for supplemental security income benefits on December 30, 2016.  (Tr. at 184-194).  She then applied for disability insurance benefits on January 3, 2017.  (*Id.* at 195-200).  She asserted a disability onset date of November 29, 2016. (*Id.* at 185, 196).  Plaintiff's claim was initially denied on February 9, 2017, and again upon reconsideration on June 8, 2016.  (*Id.* at 116-119).  On November 5, 2018, Administrative Law Judge ("ALJ") Lloyd E. Hubler III held a hearing that Plaintiff and her attorney attended.  (*Id.* at 36).  The ALJ entered an unfavorable decision on February 19, 2019.  (*Id.* at 14).  The Appeals Council subsequently denied Plaintiff's request for review on January 25, 2020.  (*Id.* at 1).  Plaintiff filed her Complaint in this Court on February 21, 2020.  (Doc. 1).  The case is ripe for review.

## III.    Summary of the Administrative Law Judge's Decision

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant has proven she is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir.

1999)).  An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his or her past relevant work; and (5) can perform other work of the sort found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 29, 2016.  (Tr. at 19).  At step two, the ALJ found that Plaintiff has the following severe impairments:  "cervical disc herniation; chronic cervical and thoracic sprain/strain [sic]; myalgia; chronic pain syndrome; depression; anxiety; and obesity (20 [C.F.R. §] 404.1520(c))."  (*Id.*).  The ALJ, at step three, determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§] 404.1520(d), 404.1525 and 404.1526)."  (*Id.* at 20).

At step four, the ALJ found that Plaintiff:

> has the residual functional capacity ["RFC"] to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except that the claimant is limited to frequently climbing ramps and stairs, occasionally climbing ladders, ropes, and scaffolds, frequently balancing, stooping, kneeling, and crouching, and occasionally crawling. She must avoid all exposure to hazardous moving machinery or unprotected

> heights. Furthermore, the claimant is able to concentrate, persist, and maintain pace for 2-hour intervals and perform both simple and detailed tasks in a routine work environment. She is able to have occasional contact with supervisors and frequent contact with coworkers and the general public.

(*Id.* at 21).

The ALJ determined Plaintiff could not perform any of her past relevant work, citing 20 [C.F.R. §] 404.1565. (*Id.* at 26). "Considering the claimant's age, education, work experience, and [RFC]," the ALJ determined that "the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 [C.F.R. §§] 404.1569, 404.1569a [sic], and 404.1568(d))." (*Id.* at 28). Lastly, the ALJ found that "[t]he claimant has not been under a disability, as defined in the Social Security Act, from November 29, 2016, through the date of this decision (20 [C.F.R. §] 404.1520(g))." (*Id.* at 29).

## IV.     Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a

reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

**V.     Analysis**

On appeal, Plaintiff raises three issues, the first issue being supported by several sub-arguments.  As stated by Plaintiff, the issues are:

1.   Whether the ALJ's evaluation of Plaintiff's subjective allegations is supported by substantial evidence;

   a.  The findings regarding mental impairments [are] not supported by substantial evidence;

   b.  The [finding] that [Plaintiff's] psychiatric symptoms had improved to a point that they were stabilized is incorrect;

   c.  The failure to perform mental status examinations is not relevant in determining the mental limitations of [Plaintiff];

   d.  The multiple normal mental status examinations by the primary physician are not indicative of no disability;

   e.  The finding by the ALJ that [Plaintiff's] physical condition and complaints of neck pain have been stable for many years is not supported by substantial evidence;

   f.  The ALJ stated incorrectly that [Plaintiff's] medication dosages have not changed since at least February 2016; and

   g.  The ALJ argued that the kind of treatment for [Plaintiff's] physical problems [has] not changed over the years.

2.   Whether the ALJ failed to develop the record to determine why [Plaintiff] left her last employment.

3.   Whether the ALJ should have determined that Plaintiff suffered from cervical dystonia.

5

(Doc. 19 at 17, 18, 19, 20, 22, 23, 25, 28).

From a review of Plaintiff's arguments, it appears that the first issue has two main contentions:  (1) the ALJ erred in his assessment of the evidence regarding Plaintiff's mental impairments; and (2) the ALJ also erred in his assessment of the evidence regarding Plaintiff's physical impairments.  (*Id.* at 17-24).  The Undersigned addresses all of these issues below.

> ### A.    Whether the ALJ's evaluation of Plaintiff's subjective allegations is supported by substantial evidence.

Plaintiff believes that her "credibility should be at a very high level," because she was older than the age of 50 at the onset of her disability and she worked consistently from 1983 until onset of her disability, with lifetime earnings of $1,719,000.  (*Id.* at 17).  Plaintiff goes on to claim that the ALJ's credibility determination concerning Plaintiff's subjective allegations of physical and psychological impairments is not supported by substantial evidence.  (*Id.*).  Plaintiff supports this claim with multiple arguments that seek to demonstrate how the ALJ erred in his assessment of the evidence regarding Plaintiff's mental and physical conditions.  (*Id.* at 17-24).

> ### 1.    Whether the ALJ erred in his assessment of the evidence regarding Plaintiff's mental impairments.

Plaintiff advances three primary claims to support her argument that the ALJ erred while assessing the evidence regarding Plaintiff's mental impairments:  (1) the ALJ misstated and "[cherry picked]" the facts when he found that Plaintiff's

"psychiatric symptoms had improved to a point that they were stabilized," (*id.* at 19); (2) the ALJ implied misstatements of the law when he highlighted that the notes of Dr. Michael Missory, Plaintiff's psychologist, did not contain any indication of regular mental status examinations and appeared to be based primarily on Plaintiff's subjective allegations, (*id.* at 20-21); and (3) the ALJ placed too much emphasis on the normal mental status examinations conducted by Dr. Ahmad Sahebzamani, Plaintiff's primary treating physician.  (*Id.* at 22).

Specifically, as to Plaintiff's claim that the ALJ "[cherry picked]" Plaintiff's "good visits" with Dr. Missory to find that Plaintiff's psychiatric symptoms had improved to a point that they were stabilized, Plaintiff highlights medical records in the transcript where Dr. Missory noted that Plaintiff's psychiatric condition appeared to be deteriorating.  (*See id.* at 19-20).  Plaintiff relies on seven different medical records where Dr. Missory noted that she presented with increased symptoms of anxiety and depression.  (*Id.* (citing Tr. at 779, 778, 922, 919, 917, 915, 907)).  Plaintiff contends that the ALJ's failure to mention these visits constitutes impermissible "cherry picking," (*id.* at 19 (citing *Habberfield v. Colvin*, No. 3:14-cv-1422-LEK-CFH, 2016 WL 769774, at *18 (N.D.N.Y. Feb. 1, 2016), *report and recommendation adopted*, No. 3:14-cv-1422-LEK-CFH, 2016 WL 796064 (N.D.N.Y. Feb. 24, 2016)), which leads to a conclusion not supported by substantial evidence.  (*Id.* at 20).

Plaintiff further argues that the ALJ erred by placing weight on the fact that Dr. Missory's notes did not contain regular mental status examinations to ascertain

objective findings and appeared to be based primarily on Plaintiff's subjective complaints.  (*Id.* (citing Tr. at 24)).  Plaintiff contends that the ALJ's findings imply first, that "a psychiatrist or psychologist needs to a use mental status exam to ascertain objective findings, [and second, that a psychologist can't rely] solely on the subjective allegations of the plaintiff."  (*Id.*).  Plaintiff argues that both implications are incorrect statements of the law.  (*Id.*).  She cites *Adams v. Comm'r of Soc. Sec. Admin.*, to support the proposition that mental status examinations are not the only form of objective evidence psychiatrists are entitled to rely on, but rather are only used to determine if a patient is safe to leave the doctor's office, and that psychological diagnoses will always depend in part on a patient's self-report.  (*Id.* at 21 (citing *Adams v. Comm'r of Soc. Sec. Admin.*, No. 4:18-cv-0042-HRH, 2019 WL 2503935, at \*4 (D. Alaska June 17, 2019) (citing *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017))).

Finally, Plaintiff argues that the ALJ erred by placing too much weight on the mental status examinations conducted by the primary care physician, Dr. Sahebzamani.  (*Id.* at 22 (citing Tr. at 24-25)).  Specifically, Plaintiff alleges that "mental status exams are only given to determine if the patient is well enough to leave the office."  (*Id.*).  Additionally, Plaintiff contends that Dr. Sahebzamani was not treating Plaintiff for psychological issues and any mental status exams conducted by him were merely cursory and unreliable.  (*See id.*).

In response, the Commissioner cites both to the applicable legal standards for determining whether substantial evidence supports the ALJ's determination of a

claimant's alleged symptoms and to various records in the Transcript where the ALJ's findings were supported.  (*See id.* at 24-25).

Mindful of these arguments, the Undersigned next addresses the appropriate legal standards.

To establish disability based on the claimant's testimony concerning her subjective symptoms, the claimant must first show evidence of an underlying medical condition and then either:  (a) objective medical evidence that confirms the severity of the alleged symptoms that medical condition causes; or (b) that the objectively determined medical condition is so severe that it can reasonably be expected to cause the alleged symptoms.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).  "If the ALJ discredits subjective testimony," as he did here, "he must articulate explicit and adequate reasons for doing so."  *Id.*

The ALJ stated that "**despite several fluctuations**, the medical evidence demonstrates an overall **trend** of stability in the claimant symptomology."  (Tr. at 25 (emphasis added)).  The ALJ found that "Dr. Missory noted an overall increase in symptomology" coinciding with the alleged disability onset date, (*id.* at 24 (citing Tr. at 397-404, 405-422, 431-460)), and further indicated that Dr. Missory had "noted that the claimant was making good progress and her psychological symptoms were reduced."  (*Id.* (citing Tr. at 907-909)).  The ALJ noted that Dr. Missory provided cognitive behavioral therapy and psychotherapy and had completed a mental status examination ten days before the alleged disability onset date, which demonstrated no

significant findings.  (*Id.* (citing Tr. at 472, 503)).  Finally, the ALJ found that the record contained numerous "non-specialized mental examination findings from [Plaintiff's primary care physician.]"  (*Id.* (citing Tr. at 524, 527, 531, 535, 539, 543, 547, 551, 555, 559, 563, 567, 571, 575, 579, 583, 819, 823, 827, 831, 835, 839, 843, 847, 851, 858, 862, 866, 870, 874, 889, 893)).

Here, the Undersigned finds that substantial evidence supports the ALJ's credibility determination of Plaintiff's subjective allegations regarding her psychological impairments.

With regard to the claim that the ALJ failed to consider medical records indicating that Plaintiff's psychological symptoms were deteriorating, the Undersigned finds that the ALJ properly considered the entire record and his assertion that Plaintiff's condition is stable despite fluctuations is supported by substantial evidence.  Indeed, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision [. . .] is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'"  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (citing *Foote*, 67 F.3d at 1561).  The ALJ did not engage in "cherry picking."  He summarized the evidence present in the transcript and correctly stated the overall trends regarding Plaintiff's psychological symptoms.  (*See* Tr. at 24).

With respect to Plaintiff's claims regarding the mental status examinations, the Undersigned finds that the ALJ properly considered the mental status examinations

that were conducted, and his findings were supported by substantial evidence.  While Plaintiff is correct in asserting that mental status examinations are not the only form of objective evidence that psychiatrists are entitled to rely upon, this does not prevent the ALJ from considering the minimal mental status examinations that are conducted.  The ALJ reviewed the mental status examination by Dr. Missory that demonstrated "no significant findings."  (*Id.* (citing Tr. at 472, 503)).  Additionally, the ALJ looked to other objective evidence in determining the credibility of Plaintiff's subjective allegations, such as the cognitive behavioral therapy and psychotherapy treatment provided by Dr. Missory.  (*Id.*).  While psychological diagnoses will depend in part on the subjective allegations by the patient, there is no precedent for relying solely on a patient's self-reporting of psychological limitations. *See Ogranaja v. Commissioner of Soc. Sec.*, 186 F. App'x 848, 850 (11th Cir. 2006) (holding that an ALJ did not err by rejecting the opinion of an examining psychologist when that psychologist based his opinion on the claimant's subjective complaints without significant clinical findings).  The ALJ's determination regarding Dr. Missory's use of the mental status examination and its effect on the credibility of Plaintiff's subjective complaints is supported by substantial evidence.  *See id.*

Plaintiff's assertion that mental status examinations are used only to determine whether a patient is safe to leave the doctor's office is without merit. Plaintiff's reliance on the testimony of the personal practices of a single physician in an unrelated case decided in the District of Alaska, (*see* Doc. 19 at 20-21), is not

persuasive in determining the objective value of a medical examination regularly administered by physicians nationally.

In conclusion, the Undersigned finds that the ALJ did not improperly rely on Plaintiff's treating physician's mental status examinations, which were reviewed in conjunction with the entire medical record. *See Choquette v. Comm'r of Soc. Sec.*, 695 F. Supp. 2d 1311, 1330 (M.D. Fla. 2010) (finding that a physician's Mental Status Examinations constituted objective medical evidence). Even though Plaintiff's primary care physician was not prioritizing Plaintiff's psychological conditions, the ALJ is entitled to rely on the entire record while conducting his credibility determination. *See id.*; *Foote*, 67 F.3d at 1558.

> ### 2. Whether the ALJ erred in his assessment of the evidence regarding Plaintiff's physical impairments.

Plaintiff advances three primary arguments that the ALJ erred while assessing the evidence regarding her physical impairments: (1) the ALJ's finding that Plaintiff's physical condition and neck pain have been stable for many years is not supported by substantial evidence, (*id.* at 22-23); (2) the ALJ incorrectly stated that Plaintiff's medication dosages had not changed since February 2016, (*id.* at 23); and, (3) the ALJ incorrectly found that Plaintiff's treatment for her physical impairments did not change when she started treating with Dr. Chowdhury and Dr. Esperanza. (*Id.* at 23-24).

Specifically, Plaintiff argues that the ALJ's finding that her physical pain is stable is not supported by substantial evidence because his findings do not take into

account her decreased earnings from 2013, the year of her accident, to 2016, the year

of the alleged disability onset.  (*See id.* at 22).  Plaintiff cites to the hearing transcript

where she explained that work became more difficult after the 2013 accident.  (*Id.* at

22, 23 (citing Tr. at 42, 43, 58, 60, 61)).  Plaintiff alleges that the decrease in earnings

from $82,352 in 2013 to $38,649 in 2016 indicate that Plaintiff was succumbing to

chronic pain, which should have been considered by the ALJ.  (*Id.* at 23).

   Plaintiff further argues that the ALJ incorrectly stated and relied on the claim

that "[Plaintiff's] medication dosages have not changed since at least February

2016."  (*Id.* (citing Tr. at 25)).  Plaintiff states that she stopped taking Valium and

started taking Flexeril in early 2018, she was given 10 mg of Diazepam by her

primary care physician, and, contrary to the ALJ's claims, she was taking

psychotropic medication in the form of Vyvanse for her ADHD.  (*Id.* (citing Tr. at

772, 879, 534, 637)).  Plaintiff does not make any other arguments, but presumably

believes that the ALJ's failure to note these medication changes warrants remand.

   Finally, Plaintiff argues that the ALJ supported his claim that Plaintiff's pain

remained at a similar intensity throughout the last several years because her

treatment remained the same when she began seeing Dr. Chowdhury.  (*Id.* (citing Tr.

at 23)).  Plaintiff correctly points out that the ALJ's assertion was incorrect because

the record demonstrates that Plaintiff began receiving different therapy than that

received before she stopped working in November 2016.  (*Id.*).  Plaintiff specifies that

Dr. Chowdhury performed a trigger point injection, not a steroid injection or facet

point injection.  (*Id.* (citing Tr. at 904)).  Additionally, Plaintiff points out that Dr.

Esperanza performed Botox injections after the alleged disability onset date.  (*Id.* at 24 (citing Tr. at 1029)).

For his part, the Commissioner merely cites both to the applicable legal standards for determining whether substantial evidence supports the ALJ's determination of a claimant's alleged symptoms and to various records in the Transcript where the ALJ's findings were supported.  (*See id.* at 24-25).

Mindful of these arguments, the Undersigned next addresses the appropriate legal standards.

A Residual Functional Capacity ("RFC") indicates the limits of a claimant's remaining abilities, despite the physical and mental limitations of her impairments. *See* 20 C.F.R. § 416.945(a); *Phillips*, 357 F.3d at 1238.  The ALJ is responsible for determining the claimant's RFC, and he must consider the claimant's ability to "meet the physical, mental, sensory, and other requirements of work."  20 C.F.R. § 416.946(c).  The ALJ must consider all the claimant's medically determinable impairments, even those not designated as severe.  20 C.F.R. § 416.945(a)(2).

To establish disability based on the claimant's testimony concerning her subjective symptoms, the claimant must first show evidence of an underlying medical condition and then either:  (a) objective medical evidence that confirms the severity of the alleged symptoms that medical condition causes; or (b) that the objectively determined medical condition is so severe that it can reasonably be expected to cause the alleged symptoms. *See Wilson*, 284 F.3d at 1225.  "If the ALJ discredits

subjective testimony," as he did here, "he must articulate explicit and adequate reasons for doing so." *Id.*

    The Undersigned finds that the ALJ's determination of Plaintiff's limitations due to her physical impairments is supported by substantial evidence.  Regarding Plaintiff's first argument, the ALJ specifically considers Plaintiff's work history in his determination of her RFC.  (Tr. at 25).  The ALJ is not required to infer that Plaintiff is suffering from increasing chronic pain merely because her earnings decreased over a three-year period.  *See Foote*, 67 F.3d at 1558.  Plaintiff does not allege that work became progressively more difficult to perform as time went on, but only establishes a progressive decrease in her overall earnings from 2013 to 2016.  The ALJ is permitted to weigh the entirety of the evidence in the record, he is not required to analyze circumstantial evidence such as Plaintiff's earnings from 2013 to 2016 in a vacuum.  *Id.*

    Although the ALJ's findings regarding the medication taken by Plaintiff were incorrect, the error was harmless.  While Plaintiff correctly asserts that her medication was switched from Valium to Flexeril in early 2018, Plaintiff has not adequately explained how this change makes any difference.  Moreover, the ALJ specifically considered a medical record from July 2018 that indicates Plaintiff was having no adverse effects from her medications, including Flexeril.  (Tr. at 25 (citing Tr. at 899)).  Further, Plaintiff's contention that the ALJ should have accounted for the Vyvanse she takes for ADHD is inconsequential.  Her allegations regarding her mental impairments are premised on her anxiety and depression so a change in

ADHD medication does not relate to the issue, especially since "[P]laintiff testified that she does not take medication to address any psychological symptoms." (*Id.* (citing Tr. at 65)). Furthermore, the ALJ noted that Dr. Chowdhury reported that Plaintiff was not experiencing any side effects from medications. (*Id.* (citing Tr. at 899)).

Finally, the Undersigned finds that the ALJ committed harmless error when he incorrectly relied on the presumption that Plaintiff had not been given any new treatment for her physical symptoms. (*Id.* at 23). This error was harmless because the ALJ's main finding, that Plaintiff's physical condition remained stable, is supported by substantial evidence. This Court's standard of review is whether the ALJ's conclusion as a whole was supported by substantial evidence in the record, a standard which the ALJ met. *See Foote*, 67 F.3d at 1558. Specifically, the ALJ cites to the fact that three different neurologists opined that Plaintiff had reached maximum medical improvement and that her condition was stable, there were no changes from her previous diagnostic imaging, and Plaintiff reported that physical therapy was somewhat effective. (Tr. at 23, 24); *see Foote*, 67 F.3d at 1558.

**B.    Whether the ALJ failed to develop the record to determine why Plaintiff left her last employment.**

Plaintiff argues that the ALJ viewed Plaintiff's employment history after the accident in 2013 until the alleged disability onset date in 2016 as a crucial element in this case. (Doc. 19 at 27). Therefore, Plaintiff claims that she was entitled to an opportunity to explain "why things happened the way they did." (*Id.*). She claims

the ALJ's failure to question her about what changed from her time working to her alleged disability onset date amounted to a neglect of the ALJ's duty to develop the record.  (*Id.*).

Plaintiff asserts that the ALJ should have asked more questions about her treatment during the period between her 2013 accident and the 2016 alleged disability onset date.  (*Id.* at 26).  She suggests that, because the ALJ did not develop the record further regarding that issue, it is unclear whether she was working "believing either she was going to get better or she was simply afraid of not having money to pay her bills."  (*Id.*).  Plaintiff does state that "while the ALJ did make inquiry as to **why** of [sic] the claimant stopped work, which inquiry was further developed, he never asks [sic] a single question about her treatment during that timeframe."  (*Id.*).

The Commissioner responds by claiming that Plaintiff's argument is irrelevant because the ALJ found that Plaintiff was no longer capable of performing her past work as a mortgage underwriter in step four of the sequential evaluation process.  (*Id.* at 27 (citing Tr. at 27)).  Indeed, the ALJ found that Plaintiff retained the RFC to perform alternate unskilled light and sedentary work.  (*Id.* (citing Tr. at 27-29)).

Mindful of these arguments, the Undersigned next addresses the appropriate legal standards.

A plaintiff bears the burden of proving she is disabled and is responsible "for producing evidence in support of h[er] claim."  *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a)).  However, an ALJ "has a basic

duty to develop a full and fair record." *Id.* (citing 20 C.F.R. § 416.912(d)); *see* 20 C.F.R. § 404.1545(a)(3) ("However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources."). This duty applies whether or not the claimant is represented by counsel. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995).

A plaintiff must show prejudice before a court will find that a plaintiff's "'right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record.'" *Brown*, 44 F.3d at 934-35 (citing *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985)). To determine if prejudice exists, the Court must determine if the record contains evidentiary gaps that will result in unfairness or clear prejudice. *Id.* at 935 (citing *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982)). "The lack of medical and vocational documentation supporting an applicant's allegations of disability is undoubtedly prejudicial to a claim for benefits. We have no way of knowing whether the evidence missing from the case would sustain [claimant's] contentions of her inability to work." *Id.*

During the hearing, the ALJ specifically asked Plaintiff, "why did you stop doing that work?" To which Plaintiff replied, "I was let go [three out of the four] last jobs for job performance and then [it] just became apparent I couldn't do the work anymore. I was in too much pain." (Tr. at 42). The ALJ asked Plaintiff to continue

to elaborate on the specifics of why she ceased working.  (*Id.* at 42-43).  The ALJ even indicated that the time period from the 2013 accident to the 2016 alleged disability onset date was pertinent to his review of the case when he stated "you were able to continue working through virtually all of 2016.  You stopped working towards the end of September of that year." (*Id.* at 61).  He continued to ask questions concerning Plaintiff's work history for the relevant time period, such as why she had multiple different employers.  (*Id.* at 61-62).

Given the ALJ's development of the record concerning why Plaintiff left her past work, the Undersigned finds that the ALJ did not neglect his duty to develop the record.  The ALJ provided Plaintiff with multiple opportunities to explain why she left and could no longer perform her past relevant work.  (*See id.* at 42-43, 61-62).  The fact that the ALJ did not ask Plaintiff questions about her treatment during the relevant time period was not error because the ALJ already had access to medical records detailing Plaintiff's condition at the time.  *See Brown*, 44 F.3d at 935 (citing *Smith*, 677 F.2d at 830).  Plaintiff has not shown that she has been prejudiced by the ALJ's development of the record and, therefore, she is not entitled to a remand on that issue.  *See id.* at 934-35 (citing *Kelley*, 761 F.2d at 1540).  The Undersigned is further persuaded by Commissioner's argument that any lack of further development of the record is immaterial because the ALJ determined Plaintiff is incapable of performing her past relevant work.  (*See* Doc. 19 at 27).

**C.    Whether the ALJ should have determined that Plaintiff suffered from cervical dystonia.**

Plaintiff argues that the ALJ failed to list cervical dystonia as one of Plaintiff's severe impairments and incorporate it into Plaintiff's RFC.  (*Id.* at 28).  Plaintiff contends that the problems surrounding her neck were only discussed in the context of her pain and the ALJ never acknowledged the "separate and distinct medical problem [of] cervical dystonia which [Plaintiff described] as almost unbearable."  (*Id.* (citing Tr. at 889)).

In response, the Commissioner asserts failure to list cervical dystonia as one of Plaintiff's severe impairments is harmless error since he did evaluate all the physical limitations and symptoms caused by the condition in Plaintiff's RFC.  (*Id.* at 29 (citing Tr. at 19, 21-27)).  The Commissioner argues further that, even if the Plaintiff faced increased physical limitations, the error is harmless because the ALJ's RFC determination accounted for enough jobs in the national economy that only require sedentary work.  (*Id.* (citing Tr. at 28-29)).

Mindful of these arguments, the Undersigned next addresses the appropriate legal standards.

At step two, an ALJ considers whether a claimant has a severe impairment or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  A severe impairment is an impairment that significantly limits a claimant's ability to do basic work activities.  *See* 20 C.F.R. § 404.1521(a) (defining "non-severe impairment").

"Step two is a threshold inquiry."  *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).  It "acts as a filter" to eliminate claims involving no substantial impairment.  *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).  The finding that any impairment is severe satisfies step two, and any failure to identify all impairments that should be severe is harmless.  *Id.*; *see also Delia v. Comm'r of Soc. Sec.*, 433 F. App'x 885, 887 (11th Cir. 2011) (concluding substantial evidence did not support ALJ's finding at step two that plaintiff's mental impairments were not severe but concluding the error was harmless because the ALJ found other severe impairments and considered the mental impairments at later steps).  Although an ALJ does not have to identify all impairments that may be severe at step two, he must demonstrate he considered all the claimant's impairments at step three—severe and non-severe—in combination.  *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010).  "[A] simple expression of [his] consideration of the combination of impairments constitutes a sufficient statement of such findings."  *Id.* (citing *Jones v. HHS*, 941 F.2d 1529, 1533 (11th Cir. 1991)).

Here, the Undersigned finds that the ALJ committed a harmless error by failing to include cervical dystonia in his list of severe impairments at step two.  *See Jamison*, 814 F.2d at 588.  Indeed, the ALJ specifically evaluated cervical dystonia and noted that Plaintiff was treated with botulinum toxin shots for the condition in his determination of Plaintiff's RFC.  (Tr. at 23 (citing Tr. at 966, 1025-1029)).  His evaluation of the condition in the RFC makes the omission in step two harmless error.

**VI.      Conclusion**

Upon consideration of the parties' submissions and the administrative record, the Undersigned finds that substantial evidence supports the ALJ's credibility determination of Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms.  Second, the ALJ met his affirmative obligation to develop the administrative record through specific questions to Plaintiff regarding why she stopped working as a mortgage underwriter.  Lastly, failure to include cervical dystonia as one of Plaintiff's severe impairments in step two constituted harmless error, because the ALJ specifically established that Plaintiff had cervical dystonia in his determination of Plaintiff's RFC and he additionally accounted for all of the physical limitations associated with Plaintiff's neck impairments in the RFC. Accordingly, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1.      The decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

2.      The Clerk of Court be directed to enter judgment accordingly, to terminate any pending motions and deadlines, and to close the case.

**RESPECTFULLY RECOMMENDED** in Chambers in Ft. Myers, Florida

on January 19, 2021.

_____
Mac R. McCoy
United States Magistrate Judge


## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the

Report and Recommendation's factual findings and legal conclusions.  A party's

failure to file written objections waives that party's right to challenge on appeal any

unobjected-to factual finding or legal conclusion the district judge adopts from the

Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties